UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Civil No. 11-2595 (RHK/LIB)

CHARLES LEE ELWELL,

Petitioner,

**REPORT AND RECOMMENDATION**

v.

SCOTT P. FISHER, Warden,

FCI Sandstone,

Respondent.

---

Niall A. McLeod, Esq., Barnes & Thornburg, LLP, 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402-4662; William L. Kutmus, Esq., Kutmus and Pennington, P.C., 604 Locust Street, Suite 618, Des Moines, IA 50309; S.P. DeVolder, Esq., The DeVolder Law Firm, 1228 Sunset Drive, Suite C, Norwalk, IA 50211-2401, for Petitioner.

Mary Jo Madigan, Assistant U.S. Attorney, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Respondent.

---

UNITED STATES MAGISTRATE JUDGE LEO I. BRISBOIS

This matter is before the undersigned United States Magistrate Judge on Petitioner Charles Elwell's ("Elwell") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. Elwell claims the Federal Bureau of Prisons ("BOP") incorrectly computed the term of his prison sentence. Respondent has filed a Response opposing Elwell's Petition, and Elwell filed a Reply. After the Supreme Court issued its decision in

Setser v. United States, 132 S.Ct. 1463 (2012), Elwell filed a Surreply Brief and Respondent filed a Reply to the Surreply. The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it is recommended that the petition be denied and dismissed with prejudice.

## I. FACTUAL BACKGROUND

Elwell is a federal prisoner who was confined at FCI-Sandstone at the time he filed the habeas petition. (Pet. ¶ 6 [Doc. No. 1]). Elwell is serving a 66-month federal prison term followed by four years of supervised release for Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(B), and 846, imposed in the United States District Court, Southern District of Iowa. (Declaration of Julie Groteboer ("Groteboer Decl.") ¶ 3, Attach. A, Public Information Data [Doc. No. 9]). Elwell's projected release date, via Good Conduct Time release, is November 16, 2013. (Id.)

Elwell was arrested in Des Moines, Iowa on July 26, 2006, and charged with state crimes of Possession with Intent to Deliver Marijuana, Failure to Affix Tax Stamp, Felon in Possession of a Firearm, and Driving While Revoked. (Declaration of Patrick Liotti ("Liotti Decl.") ¶ 3 [Doc. No. 8]). Elwell was released on bond the next day, and the charges were subsequently dismissed. (Id.)

Then, Elwell was arrested by the Des Moines Police Department on October 16, 2006, for OWI-Third Offense, and was released on bond on October 25, 2006. (Id. ¶ 4). On January 7, 2007, Elwell was arrested again by the Des Moines Police Department, for Possession of Marijuana-Third Offense, and released on bond the same day. (Id. ¶ 5). Three months later, on March 22, 2007, the Des Moines Police

Department arrested Elwell for Public Intoxication and bond violation relating to other cases (OWI-Third Offense and Eluding). (Id. ¶ 6). Elwell was out on bond but appeared in State court on March 23, 2007, for sentencing on his OWI-Third Offense and Eluding charges. (Declaration of Jodi A. Nissen "Nissen Decl." ¶ 2, Attach. A, Order of March 23, 2007 [Doc. No. 10-2]). The State court continued the sentencing, revoked Elwell's $91,700 bond on the OWI-Third Offense and Eluding charges, increased Elwell's bond on those charges to $500,000, and placed him in custody on March 23, 2007. (Nissen Decl., Attach. A).

Elwell was borrowed from state custody on March 28, 2007, pursuant to a federal writ of habeas corpus *ad prosequendum*, for prosecution of federal charges and any further proceedings on the federal case. (Liotti Decl., ¶ 7, Attach. A, USMS Prisoner Tracking System form and Application for Writ of Habeas Corpus Ad Prosequendum). On November 14, 2007, Elwell was sentenced, in the United States District Court for the Southern District of Iowa, to a 66-month term of imprisonment for Conspiracy to Distribute Marijuana. (Liotti Decl., ¶ 8, Attach. B, Judgment in a Criminal Case). Elwell was then returned to state custody on November 23, 2007. (Liotti Decl., ¶ 9, Attach. A, USMS Prisoner Tracking System Form).

On April 21, 2008, Elwell was sentenced in State court, Polk County Iowa, to a concurrent term of five years for Eluding and five years for Operation a Motor Vehicle While Under the Influence of Alcohol or a Drug-Third Offense. (Liotti Decl., ¶ 10, Attach. C, Polk County Prison Order and Sentencing Order). The State court ordered that Elwell receive credit for "days served in Stat[e] custody thus far[,]" and that the state sentences were concurrent and to be served concurrently with his federal sentence.

(Liotti Decl., Attach. C at 1 [handwritten at bottom of page]).

On Elwell's motion, he was resentenced in State court on February 6, 2009. (Liotti Decl., ¶ 11, Attach. D, Order on Sentencing Reconsideration). Judge Witt of Polk County Iowa District Court indicated that he had expected the State to release Elwell to federal custody on April 21, 2008, because he had ordered Elwell's state and federal sentences to be concurrent. (Liotti Decl., Attach. D at 1-2). However, Elwell remained in state custody, and was advised he would not be given credit for time served in state custody against his federal sentence. (Id. at 2). Because it appeared likely Elwell would in fact serve consecutive sentences if the State court did not resentence him, Judge Witt ordered a substitute sentence of credit for time served. (Id.) The court ordered credit for all time served from March 23, 2007 through February 6, 2009. (Liotti Decl., ¶ 14, Attach. D at 3).

Elwell then requested credit for time served in State custody against his federal sentence through a nunc pro tunc designation. (Liotti Decl. ¶ 13). BOP Program Statement 5880.28 addresses the provision in 18 U.S.C. § 3584(a), which states "multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." (Liotti Decl. ¶ 12, Attach. E, BOP Program Statement 5880.28). In response to Elwell's request for a nunc pro tunc designation, the BOP noted that although 18 U.S.C. § 3584(a) states that multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently, the BOP contacted the sentencing court about Elwell's request for a retroactive designation for concurrent sentences and received no response. (Pet., Exhibit D at 3, Response to Central Office Administrative Remedy

Appeal). Elwell's request for nunc pro tunc designation was denied because the BOP determined that Elwell's case would not be consistent with the goals of criminal justice due to the nature of his state convictions, his repetitive criminal conduct, and the intent of the court. (Liotti Decl. ¶ 12, Attach F, Factors Under 18 U.S.C. 3621(b)). The BOP completed a sentence computation, and commenced Elwell's 66-month federal sentence on February 6, 2009. (Liotti Decl. ¶ 14). The commencement date was the date Elwell was released by the State, in accordance with BOP Program Statement 5880.28. (Id.)

Prior custody credit for time served from March 28, 2007 through February 6, 2009 was not applied to Elwell's federal sentence because the state applied credit for those days toward Elwell's state sentence. (Id.) Elwell exhausted his administrative remedies with the BOP regarding his claim for additional credit for time served. (Groteboer Decl., ¶ 4, Attach. B, Administrative Remedy Generalized Retrieval Data Form).

Elwell filed the current federal habeas corpus petition under 28 U.S.C. § 2241 on September 8, 2011. Elwell alleged four grounds for relief. In Ground One, Elwell alleged he should receive 239 days credit against his federal sentence for the period of March 28, 2007 through November 14, 2007; and 125 days credit against his federal sentence for the period of April 21, 2008 through August 24, 2008, pursuant to 18 U.S.C. Section 3585(b)(1). (Pet. ¶ 7(A)). In Ground Two, Elwell alleged he should be given credit against his federal sentence for 693 days for the period of March 23, 2007 through February 6, 2009, pursuant to 18 U.S.C. Section 3585(b)(2). (Pet. ¶ 7(B)). In Ground Three, Elwell contended the BOP should credit the period of March 23, 2007

through February 6, 2009, against the federal sentence, under 18 U.S.C. Section 3621(b) and Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990). (Pet. ¶ 7(C)). In Ground Four, Elwell alleged the BOP violated the separation of powers doctrine of the United States Constitution, because only the judicial branch has the authority to determine whether his federal sentence runs consecutively to his state sentence. (Pet. ¶ 7(D)).

## II. DISCUSSION

An inmate may challenge the BOP's computation of his sentence pursuant to 28 U.S.C. § 2241. United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006) cert. denied, 549 U.S. 1152 (2007) ("Prisoners are entitled to administrative review of the computation of their credits . . . and after properly exhausting these administrative remedies, an inmate may seek judicial review through filing a habeas corpus petition under 28 U.S.C. § 2241"); Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002) ("A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated. . .") The computation of a federal sentence is governed by 18 U.S.C. § 3585, which defines when a federal sentence commences and establishes when a defendant is entitled to credit for time spent in official detention prior to commencement of the sentence.

18 U.S.C. § 3585(a) provides:

> A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served.

Often, the date of commencement of a federal sentence depends on the primary

jurisdiction doctrine. When state and federal authorities exercise jurisdiction over a person at the same time, "primary jurisdiction is generally determined by which one first obtains custody of, or arrests, the person." United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). Primary jurisdiction continues with the first sovereign to have actual physical custody of the person until the first sovereign "relinquishes its priority in some way" such as release on bail, dismissal of charges, parole, or expiration of the sentence. (Id.)

Issuance of a writ of habeas corpus *ad prosequendum*, in order to transfer a prisoner for prosecution in the proper jurisdiction, "d[oes] not alter [the defendant's] custody status. It merely change[s] the location of his custody. . ." Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994) (quoting Sinito v. Kindt, 954 F.2d 467, 469 (7th Cir.), cert. denied, 504 U.S. 961(1992). In U.S. v. Hayes, the Eighth Circuit Court of Appeals explained:

> Hayes, who was "on loan" from the State of Missouri pursuant to a writ of habeas corpus *ad prosequendum* for purposes of his federal prosecution and sentencing, was not committed to the custody of the BOP after his sentencing in the district court but was, instead, returned to state custody. As such, service of his federal sentence did not commence at that time. Cole, 416 F.3d at 897. Only the BOP has the authority to determine when a federal sentence commences. *United States v. Wilson*, 502 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d. 593 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.")

535 F.3d 907, 910 (8th Cir. 2008).

The second step in computing a federal sentence is governed by 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a

> term of imprisonment for any time that he has spent in official detention prior to the date the sentence commences-
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

"Congress made clear that a defendant could not receive a double credit for his detention time." United States v. Wilson, 503 U.S. 329, 337 (1992); see also U.S. v. Kramer, 12 F.3d 130, 132 (8th Cir. 1993) (citing McIntyre v. United States, 508 F.2d 403, 404 (8th Cir.) cert. denied, 422 U.S. 2010 (1975) ("federal prisoner not entitled to credit on a federal sentence when he received credit toward his state sentence for that same time period."))

In 1990, the Third Circuit Court of Appeals addressed a situation where it determined that the federal sentencing court was powerless to order a federal sentence to be concurrent with a yet to be imposed state sentence. Barden v. Keohane, 921 F.2d 476, 482-84 (3d Cir. 1990). The court held that the BOP had the statutory authority to designate the place of confinement for serving federal sentences, thus allowing the BOP to make a federal sentence concurrent with a state sentence by designating the state institution as the place for the prisoner to serve the federal sentence. Id. In response to Barden, the BOP promulgated Program Statement ("PS") 5160.05 "in order to provide instructions for the designation of a state institution for concurrent service of a federal sentence." *Curry v. Outlaw*, No. 2:08CV00143 WRW/JTR, 2009 WL 2474631 at *6, n.9 (E.D. Ark. Aug. 12, 2009) (quotation omitted).

**A. Setser v. U.S.**

The BOP's authority to make its own determination of whether a federal sentence is concurrent, by means of a nunc pro tunc designation, has been called into question by the United States Supreme Court's decision in Setser v. U.S., 132 S.Ct.1463 (2012). The issue in Setser was who would decide, and when would they decide, "the consecutive versus concurrent question" when a federal court sentenced a defendant who had a yet to be imposed state sentence. Id. at 1467. The Court held 18 U.S.C. § 3584(a) gives federal district courts discretion to grant consecutive or concurrent sentences where multiple terms of imprisonment are imposed at different times. Id. at 1469-70. The Court stated:

> When § 3584(a) specifically addresses decisions about concurrent and consecutive sentences, and makes no mention of the Bureau's role in the process, the implication is that no such role exists. And that conclusion is reinforced by application of the same maxim (properly, in this instance) to § 3621(b) - which *is* a conferral of authority on the Bureau of Prisons, but does not confer authority to choose between concurrent and consecutive sentences."

Id. at 1470.

Accordingly, 18 U.S.C. § 3584(a) governs the issue of whether Elwell's federal sentence was concurrent or consecutive to his yet to be imposed state sentence. 18 U.S.C. § 3584(a) provides in pertinent part, "multiple terms of imprisonment run consecutively unless the court orders that the terms are to run concurrently." The BOP correctly deemed Elwell's federal sentence to be consecutive to his state term because the federal sentencing court was silent on whether the federal sentence was concurrent

to a yet to be imposed state sentence (see Liotti Decl., ¶ 12).[1] For that reason, the BOP properly denied Elwell's request for a nunc pro tunc designation to make his federal sentence concurrent to his state sentence. See Setser, 132 S.Ct. at 1469 n.3 (the Government contended the BOP applied the default rules in § 3584(a) "[a]s a matter of discretion" but the Court stated, "[w]e think it implausible that the effectiveness . . . of § 3584(a)'s prescription, for example, that 'multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently' - depends upon the 'discretion' of the Bureau.")[2]

---

[1] Prior to the Setser decision, BOP Program Statement 5880.28 addressed the legislative history of 18 U.S.C. § 3584(a):

> On occasion, a federal court will order the federal sentence to run concurrently with or consecutively to a not yet imposed term of imprisonment. . . . If the federal sentence is silent, or ordered to run consecutively to the non-existent term of imprisonment, then the federal sentence shall not be placed into operation until the U.S. Marshals' Service or the Bureau of Prisons gains exclusive custody of the prisoner.

PS 5880.28 available at http://www.bop.gov/policy/progstat/5880_028.pdf.

[2] The Setser Court also stated:

> [W]hen the district court's failure 'to anticipat[e] developments that take place after the first sentencing . . . produces unfairness to the defendant, the [Sentencing Reform] Act provides a mechanism for relief. Section 3582(c)(1)(A) provides that a district court, "upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction [or that the defendant meets other criteria for relief]."

Setser, 132 S.Ct. at 1472.

Elwell contends the Setser Court "made it clear" that the BOP had no authority "under principles of federalism" to frustrate the State court's sentencing ruling. (Surreply Brief of Petitioner in Support of his Reply at 2 [Doc. No. 19]). Elwell misreads Setser. The Setser Court's discussion of the principles of federalism were in the context of rejecting the Government's argument that it promoted a State's interest to allow the BOP to make the concurrent vs. consecutive determination after the state court imposed its sentence. 132 S.Ct. at 1471. Significantly, the Setser Court noted it was the role of the BOP to "determine how long the [federal] District Court's sentence authorizes it to continue Setser's confinement" in a situation where the federal court ordered Setser's sentence to run consecutively to one anticipated state sentence but concurrently with another anticipated state sentence. Id. at 1473. The difficulty arose when the state court ordered the state sentences to run concurrently. Id. at 1472. What Setser made clear is that the role of the BOP was to determine how to administer the federal sentence, not as Elwell suggests, how to administer the state sentence.

Elwell's remaining arguments under Setser presume he was in the federal court's primary jurisdiction before the BOP commenced his federal sentence on February 6, 2009. As discussed in Section B below, the Court finds that Elwell was under the primary jurisdiction of the State until his resentencing on February 6, 2009. Therefore, Ground Three of the Petition should be denied.

**B. Ground One**

Elwell alleges he should receive 239 days credit against his federal sentence for the period of March 28, 2007 through November 14, 2007. Elwell contends he was held in county jail in Iowa but was under federal custody during this time because the jail

costs were being paid by federal authorities. (Pet. ¶ 7A). Elwell concludes, under 18 U.S.C. § 3585(b), that since he was in "'official detention' as 'the result of the offense [conspiracy to distribute marijuana] for which [his federal sentence] was imposed," he is entitled to 239 days pre-sentence credit against his federal sentence. Respondent argues it properly calculated Elwell's sentence when it determined that the federal sentence commenced on February 6, 2009, and Elwell was not entitled to any credit he seeks against his federal sentence, because that time was applied against his state sentence.

In Reply, Elwell asserts the BOP incorrectly determined that February 6, 2009 was the commencement date of his federal sentence, and requests a hearing on the issue of when the federal sentence commenced. (Reply of the Petitioner to the Respondent's Return ("Reply") at 1 [Doc. No. 10]). First, Elwell asserts Respondent conceded, through the custody chart attached to the Liotti Declaration, that he was in federal custody from March 28, 2007 through November 23, 2007 and May 27, 2008 through August 4, 2008. (Id. at 2). Similarly, Elwell asserts that because his costs of detention were paid by the federal government on March 26, 2007, he was in their primary jurisdiction. (Reply at 7-8).[3] He further alleges he was under primary federal jurisdiction any time he was "boarded" by federal authorities. These contentions are wrong. The USMS prisoner tracking form indicates physical custody of Elwell, not primary jurisdiction over Elwell. See Cole, 416 F.3d at 897 (primary jurisdiction continues with the first sovereign to have actual physical custody of the person until the

[3] The Court finds nothing in the USMS Prisoner Tracking System form that indicates Elwell was in the physical custody of federal authorities on March 26, 2007, but notes the Writ of Habeas Corpus *Ad Prosequendum* was signed on March 26, 2007.

first sovereign "relinquishes its priority.")

Second, Elwell challenges Respondent's contention that he was in the State's primary jurisdiction as of March 23, 2007. (Id. at 2-15). Elwell asserts his bail was not technically revoked at the State court hearing on March 23, 2007, instead the amount of bail was reset to $500,000. (Id. at 4; and see Nissen Decl., Exhibit A, March 23, 2007 order). On March 23, 2007, the State court ordered Elwell to be taken into custody immediately, and it would issue a written order on the bond issues later. (Id.) On March 29, 2007, the State court noted "defendant is in custody & shall remain per terms of 3/23/2007 order." Elwell's contention that he was not in State custody and under its primary jurisdiction on March 23, 2007 is incorrect.

Elwell also alleges he remained "bondable," and his father would have posted his bond if a federal detainer had not issued three days after the March 23, 2007 hearing. (Reply at 5, citing Declaration of Dennis Elwell). However, his father did not post the bond, because a federal detainer prevented his release. (Id.) Elwell concludes that his case is like Willis v. United States, 438 F.2d 923 (5th Cir. 1971), where the court granted an evidentiary hearing to determine primary jurisdiction in a situation where the prisoner contended he could not bail out on State charges because there was a federal detainer. (Id. at 6).

Elwell notes that the Willis Court stated:

> This case is governed by our decision in *Davis v. Attorney General*, 5 Cir. 1970, 425 F.2d 238.[4] There we held that if Davis 'was denied release on bail because the federal

---

[4] Davis was based on the court's interpretation of 18 U.S.C. § 3568, which did not explicitly preclude double credit, and has been superseded by the Sentencing Reform Act of 1984, recodified at § 3585(b), which prohibits double credit. Castro v. Sniezek, 437 Fed. Appx. 70, 73 (3rd Cir. 2011).

> detainer was lodged against him, that that was time 'spent in connection with the [federal] offense,' 18 U.S.C.A. § 3568 since the detainer was issued upon authority of the appellant's federal conviction and sentence.'

Willis, 438 F.2d at 925. Elwell then concludes that Willis stands for the proposition that if a detainee would have bailed out on State charges but for the federal detainer, the detainee was in the primary custody of the federal authority. (Id. at 7).

Respondent contends the Willis exception does not apply here because the federal court did not order Elwell's sentence to run concurrently with his state sentence. Respondent is correct. The Willis exception to § 3585(b)'s prohibition against double credit has a prerequisite that the state and federal sentences be concurrent. Castro v. Sniezek, 437 Fed. Appx. 70, 73 (3rd Cir. 2011) (citing Rios v. Wiley, 201 F.3d 257, 273 n.14 (3rd Cir. 2000), superseded on other grounds as stated in, United States v. Saintville, 218 F.3d 246, 248-49 (3rd Cir. 2000); see also *United States v. Dovalina*, 711 F.2d 737, 740 (5th Cir. 1983)). The federal sentencing court did not order concurrent sentences and, under 18 U.S.C. § 3584(a), its silence meant the sentences would be consecutive. Setser, 132 S.Ct. at 1468-69 and n. 3. Elwell finished serving his state sentence when the State court issued its resentencing order, before Elwell's federal sentence commenced. Therefore, Willis is inapplicable. Castro, 437 Fed. Appx. at 73; and see Ciraolo v. BOP, Civil No. 10-1282 (RMB), 2011 WL 4352570 at *5 (D.N.J. Sept. 15, 2011) ("time served on a federal detainer does not qualify as federal prior custody credit if that time has been credited against another sentence") (citing Mills v. Quintana, No. 10-3004, 2010 WL 5027166 (3d Cir. Dec. 10, 2010)); Vega [v. United States], 493 F.3d 310, 314 [3d Cir. 2007]; Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2000)).

Elwell also relies on the State court's misunderstanding that Elwell was in federal

custody as of March 28, 2007. The State court's March 29, 2007 order indicated, "[t]he Court was advised yesterday that Mr. Elwell entered a plea in a federal case on March 28, 2007. The Court was advised that Mr. Elwell is now in federal custody." (Nissen Decl., Exhibit B). In fact, Elwell had only been "borrowed" for federal prosecution under a Writ of Habeas Corpus Ad Prosequendum on March 28, 2007, and after he was sentenced in federal court on November 14, 2007, he was returned to the State's custody on November 23, 2007. (Liotti Decl. ¶¶ 7-8, Attach. A and B).

The fact that the State court believed Elwell was in federal custody as of March 28, 2007 does not establish primary jurisdiction by federal authorities at that time. The discretionary decision to relinquish primary jurisdiction is an executive, not a judicial function. Dutton v. U.S. Attorney General, 713 F.Supp.2d 194, 200 (W.D.N.Y. May 20, 2010) (citing United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)). The fact that a State court was under the mistaken belief that because the defendant was sentenced in Federal court first, he was in primary federal custody does not establish relinquishment of state custody. Id. at 201-02; see also Amado v. Sanders, No. 2:06CV00178 SWW/JTR, 2007 WL 3231816 at *4 (E.D. Ark. Nov. 1, 2007) (use of a writ of habeas corpus ad prosequendum and return of the detainee to state authorities after federal sentencing "makes it clear that [the] [p]etitioner was only "on loan" to federal authorities, and primary jurisdiction of the state was recognized). The same is true here, where the State court later learned of its mistaken belief and resentenced the petitioner to credit for time served on his state sentence. (Liotti Decl. ¶ 11, Attach. D, Order on Resentencing Consideration). For these reasons, Ground One of the Petition should be denied, and an evidentiary hearing is unnecessary to establish the issue of

primary jurisdiction, because the issue can be determined as a matter of law.

**C. Ground Two**

In Ground Two, Elwell alleges:

> [p]ursuant to 18 U.S.C. § 3585(b)(2), Elwell is entitled to a credit against his federal sentence period of incarceration for "any time he has spent in official detention prior to the date [his federal sentence] commences" "as a result of any other charge for which the sentence was imposed." . . . Elwell's offense of conspiracy to distribute marijuana (that is, his illegal conduct that resulted in the federal criminal charge) ended on July 26, 2006 (attachment A, Judgment, at page 1). Elwell was arrested for his State court offenses after that date (and was incarcerated beginning on March 23, 2007 when his State bail was revoked). From the period of March 23, 2007 until February 6, 2009 (the date the BOP determined Elwell's federal sentence commenced, see attachment C), Elwell was so held for these State charges . . .

(Pet. ¶ 7(B). As to the effect of the credits Elwell was given by the State court in its resentencing order, Elwell argues:

> . . . the State court's resentencing order of February 6, 2009 changed nothing as it respects Elwell's entitlement to the statutory prior custody credits. The State court in the resentencing order made it explicit that its . . . intent was that Elwell serve his five years' State prison sentence concurrently with his federal period of incarceration. Only when the State court mistakenly believed that Elwell would not get credit against his federal sentence for prior custody credit time served did the State court "retroactively" through the resentencing order purport to give Elwell a credit against his State court sentence for time served . . . It is an abuse of discretion on the BOP's part to solely rely on a misapplied "retroactive" credit against a State criminal sentence imposed after-the-fact by the State court on that court's misapprehension that Elwell would not be entitled to credit against his federal sentence for this period of time served when in truth Elwell was entitled to just such credit.

(Pet. ¶ 7(B)(i)(b)).

Respondent contends Elwell is not entitled to the credit he seeks because he

was credited for this time when the State court resentenced him, and a defendant cannot receive double credit for pre-sentence detention time. Respondent asserts that "[s]ince the remedy granted to Elwell by the Iowa State court [the resentencing] was a result of his own motion, his argument that the State court's retroactive application of pre-sentence credit was erroneous should not be considered to have any merit." (Response at 11-12).

In Reply, Elwell asserts Respondent misreads 18 U.S.C. § 3585(b). (Reply at 15-16). Elwell contends the plain language of the statute is mandatory and requires that the BOP "shall" give pre-sentence credits whenever either of the two qualifying conditions of the statute obtains. (Id. at 16). Elwell focuses on the mandatory language in the statute that the defendant "shall be given credit," but ignores the final words of 18 U.S.C. § 3585(b), that the credit the defendant "shall be given" is limited to credit "that has not been credited against another sentence." This Court concludes that Elwell cannot be given additional credit against his federal sentence because all the days that he requests were already credited against his state sentence upon resentencing. The fact that this frustrates the State court's intent that the state sentence be concurrent to the federal sentence does not change the fact that 18 U.S.C. § 3585(b) prohibits the BOP from granting double credit. See Fegans v. U.S., 506 F.3d 1101, 1104 (8th Cir. 2007) (state court intent for state sentence to run concurrent to federal sentence is not binding on federal courts or the BOP). Therefore, Ground Two of the Petition should be denied.

**D. Ground Four**

Elwell contends the BOP's "denial of credits to Elwell against his federal period of

incarceration" violates the separation of powers doctrine of the Constitution because authority to determine a criminal defendant's sentence rests exclusively with the judicial branch. (Pet. ¶ 7D). The BOP correctly determined that because the federal sentencing court was silent of the issue of concurrency, and there was a yet to be imposed state sentence, 18 U.S.C. § 3584(a) and BOP Program Statement 5880.28 directed that the sentences were consecutive. (see Liotti Decl., ¶¶ 12-14). The BOP administered the sentence as provided in the statute, it did not exercise sentencing discretion. Thus, Elwell's separation of powers challenge should be denied.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1] **be DENIED**; and

2. This action be dismissed with prejudice.

Dated: April 25, 2012

s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties, by May 9, 2012, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.